## United States District Court
## District of Massachusetts

|  |  |
|---|---|
| United States,<br><br>      Plaintiff,<br><br>      v.<br><br>Louis Font, et al.,<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)   Civil Action No.<br>)   22-CV-11120-NMG<br>)<br>)<br>)<br>) |

### MEMORANDUM & ORDER

GORTON, J.

This is an action to recover on federal tax liens placed on a property owned by defendants Louis P. Font ("Font") and Gale Glazer ("Glazer"). The United States ("the government") seeks to reduce to judgment hundreds of thousands of dollars in outstanding tax liabilities owed by Font and Glazer. The government also requests a declaratory judgment ordering a judicial sale of the property. To grant such relief, the Court must first determine the relative priorities of any competing claims to the sale proceeds under federal law. See Aquilino v. United States, 363 U.S. 509, 513-514, 80 S. Ct. 1277, 4 L.Ed.2d 1365 (1960).

Now pending before the Court is the government's motion for partial judgment on the pleadings, or in the alternative, partial summary judgment declaring that certain named defendants do not have any interest in the property at issue. For the reasons that follow, the motion will be allowed.

## I.    **Background**

### A. **Factual History**

In August, 1984, Fay M. Fogelman ("Fay") conveyed by quitclaim deed a property designated as Unit 7 in the Simmons II Condominium, located at 86 Cypress Street in Brookline, Massachusetts ("the Property") to defendants Font and Glazer. To facilitate the sale, Fay's son Gerald S. Fogelman ("Gerald"), loaned approximately $130,000 to Font and Glazer, secured by a mortgage on the Property ("the Fogelman Mortgage"). The Fogelman Mortgage included a 30-year maturity date and was recorded in the Norfolk County Registry of Deeds. In 2015, Gerald died intestate. At the time of Gerald's death, there was no public record discharging the Fogelman Mortgage.

In April, 2004, Font and Glazer executed a second mortgage on the Property ("the Second Mortgage), in favor of 1-800-East-West Mortgage Company, Inc. ("East-West"). The mortgagee, East-West, subsequently assigned the mortgage to Mortgage Electronic Registration Services ("MERS") which, in turn, assigned it to

Specialized Loan Services, LLC ("SLS"), as attorney-in-fact for Deutsche Bank National Trust Company as Trustee for IndyMac INDX Mortgage Loan Trust, Series 2004-AR6, Mortgage Pass-through Certificates, Series 2004-AR6. SLS continues to hold the Second Mortgage.

Between tax years 2008 and 2019, Font and Glazer incurred federal tax liabilities of $696,517. Beginning in 2013, the government placed a series of notices of federal tax liens ("NFTLs") on the Property. Font and Glazer failed to pay the liabilities despite proper notice and demand. Between May, 2019, and August, 2020, the Internal Revenue Service ("IRS") attempted to negotiate an offer in compromise (i.e., an approval to settle the tax debt for less than the full amount owed) with Font and Glazer. The parties ultimately failed to reach an agreement and the debt remains outstanding.

**B. Procedural History**

In July, 2022, the government filed the instant action in federal court seeking to reduce to judgment the unpaid tax liabilities (Count I) and to establish the validity of the tax assessments against the Fonts and to enforce the tax liens via judicial sale of the Property, free and clear of all right, title and interest of third parties (Count II). The proceeds of the sale are to be distributed:

> first, to pay the costs of the sale;
>
> second, to the Town of Brookline, to pay any real
> estate taxes due and owing that are entitled to
> priority under 26 U.S.C. §6323(b)(6); and
>
> third, to plaintiff United States to pay the tax
> liabilities established as valid, <u>except</u> to the extent
> that the Court determines that another party has a
> superior claim, lien, or interest.

The government initially added three defendants to the action due to their potential claims or interests in the Property: East-West, Gerald Fogelman and the Town of Brookline, Massachusetts.[1]  The government filed two amended complaints to add and substitute certain defendants based on new information with respect to potential interests in the Property.

The First Amended Complaint ("FAC") replaced Gerald with his son, Yoel Fogelman ("Yoel"), and any unknown additional heirs after Yoel informed the parties that Gerald had died in 2014.  The FAC also substituted East-West for SLS, the current mortgage administrator.[2]

The Second Amended Complaint ("SAC") added as defendants Ruth Fogelman ("Ruth"), the surviving spouse of Gerald, and

---

[1] The parties stipulated that the Town would not seek to enforce liens against the property during the pendency of the case and would be required to participate in the case only to the extent of complying with discovery requests.

[2] The parties stipulated to the seniority of the SLS interest in the Property over the federal tax liens.

seven additional intestate heirs: Naomi Hertzl ("Naomi"), Dvora
Rozenberg ("Dvora"), Michael Fogelman ("Michael"), Daniel
Fogelman ("Daniel"), Avigail Aviva Weisglass ("Avigail"), Riba
Auerbach ("Riba"), and Ariel Tvi Fogelman ("Ariel").  In July,
2023, Ruth disclaimed her interest in the Property.  In January,
2024, the Court allowed plaintiff's motion for default judgment
declaring that defendants Riba, Daniel, Naomi and Dvora have no
right, title or interest in the Property.

In August, 2023, Font died.  The Court allowed the joint
motion of plaintiff and defendant Glazer to appoint Glazer as
representative of Font's estate for purposes of the action.

Unlike Gerald's other named relatives, defendant Yoel
insisted that he and the other intestate heirs have remaining
interests encumbering the property.  In his answer, Yoel alleges
that his father died in 2015

> after years of being disabled and not being able to
> take care of nimself, or any business matters,

and that Gerald did not receive loan payments from Font or
Glazer in the years before his death. Yoel admits that he does
not know the date of the last payment but indicates that his
conclusion is based upon personal communications with Glazer,
who could not provide proof of payment.

In April, 2024, the government moved for partial judgment on the pleadings or, in the alternative, for partial summary judgment against the intestate heirs who remain as defendants to the action: Yoel, Avigail, Michael, and Ariel ("the heirs"). Plaintiff seeks a declaratory judgment that the heirs have no interest in the Property. Yoel is the only heir to have filed a response in opposition to the government's motion.

## II. **Legal Standard**

Although a Rule 12(c) motion for judgment on the pleadings considers the factual allegations in both the complaint and the answer, it is governed by the same standard as a Rule 12(b)(6) motion to dismiss. See Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008). To survive such a motion, the subject pleading must contain sufficient factual matter to state a claim for relief that is actionable as a matter of law and "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

For a claim to be facially plausible, the pleadings must show "more than a mere possibility that a defendant has acted unlawfully." Id. A plaintiff cannot merely restate the defendant's potential liability and the court is not "bound to accept as true a legal conclusion couched as a factual allegation." Id.

-6-

In considering the merits of such a motion, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the favor of the nonmoving party. R.G. Fin. Corp. v. Vergara-Nunez, 446 F.3d 178, 182 (1st Cir. 2006). The Court may also consider documents if 1) the parties do not dispute their authenticity, 2) they are "central to the plaintiffs' claim" or 3) they are "sufficiently referred to in the complaint." Curran v. Cousins, 509 F.3d 36, 44 (1st Cir. 2007) (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)).

### III. Application

The crux of the dispute between the parties turns not on a question of fact but of law. The government asserts that the intestate heirs of Gerald have no interest in the Property regardless of whether Font and Glazer had paid, in full, their debt to Gerald because the Fogelman Mortgage was previously discharged by exercise of the Massachusetts Obsolete Mortgage Statute, M.G.L. c.260, § 33 ("OMS").

The statute provides that a mortgage with a stated maturity date shall be considered discharged five years after the maturity date, unless the mortgagee records notice that the obligation remains outstanding. Here, the Fogelman Mortgage included a 2014 maturity date and thus had a discharge date of

-7-

2019.  Neither Gerald nor his heirs recorded a notice of outstanding debt that would toll the discharge date.  By the plain language of the statute, plaintiff argues, the Fogelman Mortgage was therefore automatically discharged as of 2019.

Yoel maintains that the OMS allows for tolling of the discharge deadline under the present circumstances.  The statute provides that

> the period [of five years from the maturity date to discharge] shall not be extended by reason of non-residence or disability of any person interested in the mortgage or the real estate, or by any partial payment, agreement, extension, acknowledgment, affidavit or other action not meeting the requirements of this section and sections 34 and 35 [of M.G.L. Chapter 260].

Yoel contends that he is eligible for an extension of the discharge deadline because the statute prohibits extensions only in the narrow circumstances enumerated.  The text of the statute does not prohibit extensions if the mortgagee dies and his heirs were unaware of the mortgage when notice of its extension needed to be recorded.

The government acknowledges that there is no controlling Massachusetts state law precedent regarding extensions of the OMS deadlines but insists that both the text and purpose of the statute make clear that it does not provide for an extension in this case.  After careful consideration, this Court agrees.

-8-

When a federal court is facing a question of state law for which there is no controlling state court precedent, the federal court may

> certify a state law issue . . . to the state's highest court[] or undertake its prediction "when the course [the] state courts would take is reasonably clear."

VanHaaren v. State Farm Mut. Auto. Ins. Co., 989 F.2d 1, 3 (1st Cir. 1993) (quoting Porter v. Nutter, 913 F.2d 37, 41 n.4 (1st Cir. 1990)). This case presents a legal issue that is neither "close" nor "difficult." Easthampton Sav. Bank v. City of Springfield, 736 F.3d 46, 51 (1st Cir. 2013). This Court is therefore well-situated to make an "informed prophecy" of how the Massachusetts Supreme Judicial Court ("SJC") would rule. Showtime Entm't, LLC v. Town of Mendon, 769 F.3d 61, 79 (1st Cir. 2014).

It is axiomatic that where the language of a statute is unambiguous, the courts must enforce that statute according to its plain terms. United States v. Booker, 644 F.3d 12, 17 (1st Cir. 2011). This Court will therefore decline to adopt Yoel's statutory interpretation which would insert a major proviso into the statute that is missing from the text and contrary to its purpose.

The language of the statute is unambiguous: a mortgage, past a certain date, is automatically discharged in full, <u>unless</u> an interest holder makes a timely and proper notice of extension. Grace periods are not allowed simply by virtue of the non-resident or disabled status of the interest holder.

The Fogelman mortgage had a maturity date of 2014, and therefore had a discharge date of 2019. At no point prior to the discharge date did Gerald or his intestate heirs file a timely and proper notice of extension. As such, the Fogelman Mortgage was discharged in full in 2019.

The statute does not provide an exception for interest holders who are unaware of that interest, let alone for anyone not falling into the enumerated categories (i.e., non-residence or disability). To read such a sweeping exception into the statute would effectively reverse the effect of the OMS by "holding the door open" for nearly limitless extensions.

As the Massachusetts Court of Appeals articulates, the state legislature

> designed [the OMS] to create a definite point in time
> at which an old mortgage will be deemed discharged by
> operation of law . . . .

<u>Suffriti</u> v. <u>Shea</u>, 100 Mass. App. Ct. 740, 743, 183 N.E.3d 1173, 1177 (Mass. App. Ct. 2022) (quoting <u>Thornton</u> v. <u>Thornton</u>, 97 Mass. App. Ct. 694, 696, 150 N.E.3d 790 (2020).

The OMS and its related statutes, M.G.L. c.260 §§ 34 and 35, achieve that goal by: (1) establishing dates past which mortgages are deemed discharged in full; (2) specifying what steps must be taken by interested parties if they are to extend the discharge date; and (3) foreclosing extensions in circumstances in which equitable tolling might typically apply, such as disability or good-faith attempts to file timely but non-compliant notices of extension.

Under Yoel's proffered interpretation, extensions are available for all interest holders so long as they do not fall into one of the categories named in the statute, i.e., they were unable to file a proper notice of extension by virtue of (1) their non-residence of the property at issue or (2) their disability. Any other obstacle preventing an interest holder from complying with the terms of the OMS to extend the discharge date would be validly invoked to warrant an extension. Thus, otherwise obsolete mortgages could not be deemed discharged until it was proven that no interest holder remained who could qualify for an extension. It is unreasonable to assume that the legislature intended to permit such a perpetual cloud on title to property.

## ORDER

For the foregoing reasons, plaintiff's motion for partial judgment on the pleadings (Docket No. 49) is **ALLOWED**.  The following defendants have no interest in the Property: Yoel Fogelman, Abigail Weisglass, Michael Fogelman and Ariel Fogelman.

**So ordered.**

_Nathaniel M. Gorton_
Nathaniel M. Gorton
United States District Judge

Dated:  February 12, 2025